Sallie A. Blackman 28941
Law Offices of Timothy A. Chandler
110 West C Street Suite 1300
San Diego, California  92101
Telephone: (619) 440-8888
Facsimile:  (619) 330-9915
Email: Sallieblackman@gmail.com

Attorneys for Barry Abraham

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARRY ABRAHAM | ) Case No. |
| | ) |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES** |
| vs. | ) |
| | ) **JURY TRIAL DEMANDED** |
| COMPASS GROUP USA, INC. d/b/a | ) |
| CHARTWELLS and | ) |
| DOES 1-10 | ) |
| Defendants | ) |
| | ) |

Plaintiff Barry Abraham ("Plaintiff") alleges as follows:

1.  Plaintiff Barry Abraham is an African-American male who resides in New Haven, Connecticut. Plaintiff alleges that, within two years of the filing of this complaint, his employer Compass Group USA, Inc. d/b/a Chartwells, a food services company ("Defendant") discriminated against Plaintiff on the basis of his

race, by giving non-African American employees preferential treatment, and on the basis of his disability. Plaintiff further alleges that Defendant retaliated against him for reporting Defendant's racial discrimination against African-American employees, within two years of filing this complaint.

2. Plaintiff suffers from a physical disability, of which Defendant was notified. Plaintiff alleges that Defendant discriminated against him within two years of filing this complaint, on the basis of his disability.

3. Plaintiff reported acts of racial and age discrimination which were committed by Defendant. Plaintiff alleges that Defendant retaliated against Plaintiff for reporting his grievances against Defendant. Plaintiff was retaliated against when he reported the workplace discrimination and harassment to the Equal Employment Opportunity Commission ("EEOC"), the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and his union.

4. Plaintiff suffered emotional and physical damages as a result of Defendant's discrimination and retaliation against Plaintiff. Plaintiff has undergone treatment from medical professionals for the emotional and physical damages that he suffered, which were caused by Defendant. Plaintiff's medical treatment for emotional and physical damages is ongoing.

5. On April 22, 2019, CHRO issued Plaintiff a Release of Jurisdiction, a copy of which is attached hereto and is incorporated by reference. On June 4, 2019, the

EEOC issued a Dismissal and Notice of Rights, a copy of which is attached hereto and is incorporated by reference.

6. Plaintiff demands a jury trial.

## JURISDICTION AND VENUE

7. Jurisdiction is proper because this case involves federal questions, including violations of Title VII of the Civil Rights Act of 1964 and other federal questions. Venue is proper because all events described in this complaint occurred in New Haven County. Jurisdiction is specifically conferred on this Court by 42 U.S.C. Section 2000e-5(f). Jurisdiction is alleged pursuant to 42 U.S.C. Section 2000e-5(f). The Court has pendent jurisdiction over the state law claims in this case.

## PARTIES

8. Plaintiff is an individual who resides and works in New Haven County and is employed by Defendant.

9. Defendant operates in New Haven County and is the employer of Plaintiff at all times relevant in this complaint. On information and belief, Defendant is a private employer and Defendant employs several thousand employees.

10. The true names and capacities of the Defendants, DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint, and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this

Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed, and believes, and thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the event s and happenings herein set forth and proximately caused injury and damages to the Plaintiff as alleged herein.

11. At all times mentioned, each of the Defendants was the agent, servant, and employee of each of the remaining Defendants, and was, at all times herein mentioned, acting within the scope of said agency and employment.

## FACTUAL ALLEGATIONS

12. Plaintiff is the victim of discrimination from his employer, Defendant.

13. Plaintiff is an African-American male.

14. Plaintiff has been employed by Defendant since September 23, 2008.

15. During his employment with Defendant, Defendant repeatedly discriminated against Plaintiff on the basis of his race, and his disability. Defendant's discrimination against Plaintiff included constant harassment, denial of promotions, withholding earned funds, withholding vacation pay, forcing him to file grievances in order to secure pay that he had already earned, ignoring his seniority and assigning him the most strenuous tasks, assigning a white employee with less seniority less strenuous tasks, increasing his work load, denial of

assistance which was afforded other non-blacks in the same or similar work

positions, refusing requests for allowances and privileges which were afforded to

non-blacks, and multiple additional acts of discrimination.

16. Defendant's discrimination created a hostile work environment for Plaintiff.

In addition to discrimination, Defendant retaliated against Plaintiff for reporting

Defendant's violations of local, state, and federal laws. After he reported

Defendant's violations of the law, Defendant increased Plaintiff's workload and

denied him privileges that other non-whites were afforded, Defendant verbally

chastised Plaintiff for filing a grievance in front of other employees, Defendant

engaged in acts designed to humiliate Plaintiff in front of other employees both by

his verbal comments and by assigning Plaintiff tougher tasks while assigning non-

blacks with less seniority easier tasks, Defendant failed to supervise its executive

who was discriminating against Plaintiff on the basis of his race, after being

notified of this discrimination, and, instead, gave its executive free reign to

continue and even worsen the discrimination, among other acts of retaliation.

17. As a result of Defendant's discrimination and retaliation, Plaintiff suffered

damages. Plaintiff suffered extreme stress, which caused Plaintiff to develop a

heart condition and then made the heart condition worse, caused Plaintiff to lose

sleep, caused Plaintiff to feel depressed when he had to leave home to go to work,

caused Plaintiff to be unable to perform daily tasks to the same level that he used to perform them before Defendant created the hostile work environment for Plaintiff.

18. Plaintiff has been hospitalized for the heart condition which he suffered as a result of Defendant's hostile work environment. Plaintiff has been treated for the extreme stress he suffered which was caused by Defendant's hostile work environment. Defendant's discrimination, and retaliation, as well as the damages he suffered, took place at Southern Connecticut State University ("SCSU") in New Haven, Connecticut.

19. Defendant employed, but failed to supervise, Mr. Juan Dominguez, who served as the Director for the Campus Group at all times mentioned in this complaint. Defendant and its agent, Mr. Dominguez, harassed, retaliated, and bullied Plaintiff, causing Plaintiff extreme and protracted stress.

20. On or about 2014 to 2015, Mr. Dominguez, became the Director at SCSU. Mr. Dominguez immediately informed Plaintiff and a few other African-American employees that when he takes over, he would have the last laugh.

21. Between 2015 and August 2016, Plaintiff reported to Defendant and to his

union, Defendant's various violations of local, state, and federal law, including that Defendant retaliated against him and punished him for reporting Defendant's unfair treatment of Plaintiff, Defendant's violation of safety regulations at the work site, and Defendant's violations of the union contract, and Defendant's abuse of other African-American employees.

22. In September and October 2017, Plaintiff went to Defendant's office to request assistance to complete a work assignment. Plaintiff worked 2nd shift Monday through Friday and was assigned to clean the tables and floors.  On Sundays, Plaintiff was assigned pots and trash.  Plaintiff advised Defendant that Plaintiff needed assistance to complete this assignment. A Caucasian employee was assigned the job of tables and floors on Sundays, which Plaintiff completes Monday through Friday. The Caucasian employee works Monday through Friday on beverages. Plaintiff requested that he be reassigned tables and floors on Sunday due to the fact that it was his job and he had more seniority that the Caucasian employee. The dirtier task was given to Plaintiff. The easier task was given to the Caucasian employee, even though Plaintiff had more seniority than the Caucasian employee. Defendant refused to change the job assignments. Defendant discriminated against Plaintiff by denying his request to work the easier task and instead giving the easier task to the Caucasian employee, and giving Plaintiff the more difficult and dirtier task of pots and trash, despite Plaintiff's seniority.

**23.** In November 2017, Plaintiff's mother, who lived in North Carolina, became

ill. Plaintiff submitted a request for time off using his vacation time. Defendant

claimed that Plaintiff took two weeks in advance payment.  Plaintiff advised

Defendant that Plaintiff wanted the vacation days without pay to take care of his

mother.  Plaintiff worked for Defendant for 10 years and chose to take advance

payment instead of the vacation and was always available to work to accommodate

Defendant's needs. Defendant had a practice, habit, or custom of granting other

employees, with similar circumstances, vacation time off without pay. Defendant

denied Plaintiff's request. Shortly after Plaintiff's request was denied, Plaintiff's

mother died, on December 5, 2017. Plaintiff had to take all of his personal time,

sick time and three bereavement days. Plaintiff had no time left.

24. Before the winter break of 2017, Plaintiff submitted a grievance for

discrimination, harassment, bullying, and denying reasonable request for assistance

on job assignments and time off. Plaintiff submitted this grievance on December

27, 2017.

25. There was no resolution of Plaintiff's grievances for discrimination since a

3rd stage meeting with Defendant in 2017. Under Plaintiff's union contract

agreement, Defendant had 7 days to respond to Plaintiff's allegations. Defendant

did not respond within 7 days.  However, Defendant cut Plaintiff's hours from 5-10

pm to 5:00 - 9:30 on, Monday-Friday after Defendant was notified of Plaintiff's grievances.

26. On or about February 13, 2018**,** Defendant gave Plaintiff a verbal warning regarding his attendance. Defendant gave Plaintiff an unmerited final written warning for the same offense.  Although Plaintiff never took another day off, Plaintiff was issued this warning which stated that this was a final warning and/or suspension pending an investigation for termination.  Plaintiff did not take a day off after the first written warning. Over the course of the harassment described herein, Plaintiff sought medical attention and counseling.

27. On or about April 17, 2018, and on other dates, Defendant failed to supervise its executive, Mr. Dominguez. On April 17, 2018, Mr. Dominquez approached Plaintiff in an aggressive manner waving Plaintiff's Vacation/Days Off request sheet and harshly asking Plaintiff "What is this?!." Plaintiff responded "Did you read it?" Mr. Dominguez responded by yelling "It's denied!" Five minutes later, the floor supervisor provided Plaintiff with the request sheet on which Mr. Dominguez had written "denied" across it in big bold letters. Defendant violated the proper protocol for handling requests for vacation/days off. Instead of following protocol, Defendant's unsupervised executive invaded Plaintiff's personal space and attempted to intimidate Plaintiff. This has been Defendant's

pattern of harassment and a tactic to put fear into Plaintiff so that he will not report

wrongdoing or any other misconduct on the part of Defendant.

28. Plaintiff's grievances have not been responded to within the

time allotted to Defendant under the union contract to which Defendant is a party

and which is designed to protect Plaintiff. These delays have caused Plaintiff

additional stress because, during the time that Plaintiff waited for the grievances to

be addressed, Defendant continued to harass, embarrass, and retaliate against

Plaintiff.

29. Plaintiff works at one of the largest dining halls on Southern Connecticut

State University campus, which is Conn Hall. Plaintiff made several complaints of

retaliation, racial and other discrimination, violations of local, state, and federal

laws, and disparate treatment since the beginning of the 2017 school year, which

was in August 8, 2017. In retaliation for Plaintiff's complaints of Defendant's

racial and other discrimination and Defendant's violations of local, state, and

federal laws, Defendant refused to give Plaintiff the proper equipment to do his

job, and refused to give him adequate help to do his job. At the same time that

Defendant denied Plaintiff's requests for proper equipment and adequate help,

Defendant provided the proper equipment and adequate help to other non-African-

American employees upon their requests. Specifically, from September to

November 2017, Plaintiff explained to Defendant, on several occasions, that

Plaintiff needed help with his assignment, due to SCSU's change in the meal plan

privileges offered to students. Defendant was aware of the change in the meal plan

privileges and the resulting increase in work load which accompanied that change.

SCSU has two locations where students can have their meals: Conn Hall and the

Student Center. Plaintiff worked at Conn Hall. When SCSU changed the meal plan

directing a large majority of the students, to Conn Hall for their meals and fewer

students to the Student Center, Plaintiff advised Defendant that Plaintiff needed

help because, at the end of the night, Plaintiff was the only person working at Conn

Hall, while the Student Center was staffed with four times more people. Four

people were working at the Student Center. Despite that Plaintiff's workload had

significantly increased by the changed meal plan, Defendant refused to give

Plaintiff help. Defendant's refusal to provide Plaintiff with help caused Plaintiff to

suffer added physical stress, which exacerbated and compromised his medical

condition and disability. Defendant was aware that Plaintiff suffered from a

medical condition at the time that Defendant refused to provide Plaintiff with help.

Plaintiff also needed his job assignment on Sundays changed from pots and trash,

back to tables and floors. Defendant ignored or denied Plaintiff's requests to

change his work assignment and ignored or denied Plaintiff's seniority. In the other

large dining hall on campus at the Student Center, the employer assigned 4-

associates to tables and floors for the entire shift, while leaving Plaintiff alone to work the same job—tables and floors—for the entire shift.  At the end of the September 2017, Defendant finally assigned an associate to work with Plaintiff, but it was only one associate and the associate was only assigned to work with Defendant in the middle of the shift for only an hour and a half.

30. Defendant discriminated against Plaintiff by paying Caucasian employees more for the same job that Plaintiff works. Defendant paid Caucasian employees lead pay, which is a $1.00 more an hour for tables and floors. Defendant was denied lead pay in the building where he works.

31. Defendant engaged in harassing behavior to create a hostile work environment for Plaintiff and to force Plaintiff to quit. Since Plaintiff began to complain about Defendant's racial and other discrimination, retaliation, violations of local, state and federal law, and disparate treatment, Defendant has retaliated against Plaintiff for his complaints and discriminated against him on the basis of race, by writing Defendant up for minor infractions. The employer has treated Plaintiff worse than Defendant treated Caucasian employees. The employer has not written up Caucasian employees for far worse conduct than Plaintiff was written up for. Caucasian employees have been caught sleeping at work and were not written up. At least one Caucasian employee comes in to the building on his off days to Conn Hall and eats and sleeps while Plaintiff is working.

32.Defendant's harassment created a hostile work environment designed to

force Plaintiff to quit. Specifically, in 2015 and in 2016, Defendant withheld and

refused to give Plaintiff, without justification and in violation of Connecticut

employment laws, Plaintiff's holiday pay. Defendant schemed to keep Plaintiff's

holiday pay. Defendant cut Plaintiff's hours during December and January.

Defendant bragged about this retaliatory conduct. Defendant cut Plaintiff's hours

knowing that Plaintiff has the most seniority, in order to bump Plaintiff on the

seniority list with an employee with less seniority. Defendant bumped Plaintiff in

2015 at the end of December, knowing that Plaintiff had to work his last work day

and come back on his 1st scheduled day back, in order to receive his holiday pay.

Plaintiff filed a grievance about the withholding of his holiday pay. Defendant

denied Plaintiff's grievance. Defendant gave a Caucasian employee his holiday pay

under the same circumstances as Plaintiff. Defendant allowed a Caucasian

employee to bump another associate for his position. When a non-Caucasian

employee with more seniority than the Caucasian employee tried to bump the

Caucasian employee, Defendant refused to allow the non-Caucasian employee

with more seniority than the Caucasian employee, to bump the Caucasian

employee. Defendant changed the hours or shift to prevent the Caucasian

employee from being bumped.

33.In 2015, Defendant changed Plaintiff's name on the seniority list so that

another person that was behind Plaintiff in seniority was placed above Plaintiff.

This caused Plaintiff to be bumped off of his floors and tables position for a week.

Plaintiff had to go back and find his paperwork from 2008, which stated the

original seniority list, in order to get his position back from Defendant. In 2016, at

the end of December, Defendant cut hours and combined Plaintiff's job at Conn

Hall with another job in another building at the Student Center food hall to get

Plaintiff to quit, because Defendant knew that Plaintiff could not work that 40 hour

shift.

34. Defendant's discrimination against Plaintiff on the basis of his race and

disability, caused Plaintiff to suffer emotional and physical harm, including

extreme stress and anxiety which has aggravated Defendant's physical disability.

Plaintiff sought therapy and continues to be troubled by the events described

herein. Defendant is liable to Plaintiff for damages for future mental and emotional

distress because the long duration of the discrimination has had long-lasting

effects. Plaintiff continues to work for Defendant, and he still interacts with co-

workers who saw or heard Defendant discriminate against Plaintiff. Defendant

caused Plaintiff's mental suffering and emotional and psychological injuries,

which resulted in Plaintiff being diagnosed with a condition verified by medical

personnel.

35. Defendant is liable for punitive damages under Title VII because Defendant engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1981a(b)(1). Defendant knew that it was acting in violation of federal law when it discriminated against Plaintiff. Plaintiff suffered physical and emotional harm, Defendant demonstrated an indifference to or reckless disregard for the health or safety of Plaintiff and others, Defendant knew that Plaintiff had financial vulnerability, the conduct involved repeated actions, and the harm suffered by Plaintiff was the result of intentional malice. Defendant subjected Plaintiff to hostility or harassment in the workplace, caused threat and harm to Plaintiff's health or safety. Defendant engaged in repeated incidents of misconduct over a significant period of time and repeated failures to address Plaintiff's complaints of discrimination.

## FIRST CAUSE OF ACTION
## FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

36. Plaintiff incorporates by reference as if stated in full herein, the foregoing paragraphs 1-35.

37. Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Sections 2000e, et. seq. by discriminating against Plaintiff on the basis of race. Plaintiff seeks equitable and other relief under 42 U.S.C. Section 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

38. Plaintiff was retaliated against, denied promotions, and fired, because he reported, on more than one occasion, that his employer was violating state and federal laws.

39. Plaintiff was discriminated against and retaliated against because Defendant wanted to get rid of a whistleblower.

40. Plaintiff is qualified to perform the job that he is working and has worked during all times mentioned in this complaint.

41. Plaintiff suffered adverse employment actions, including being denied earned pay, being denied seniority, having his work load increased, being denied assistance.

## SECOND CAUSE OF ACTION
## FOR VIOLATION OF THE AMERICAN WITH DISABILITIES ACT
## OF 1990, as amended, 42 U.S.C. Sections 12101, et. seq.

42. Plaintiff incorporates by reference as if stated in full herein, the foregoing paragraphs 1-41.

43. Defendant violated American with Disabilities Act of 1990, as amended, 42

U.S.C. Sections 12101, et. seq. by discriminating against Plaintiff on the basis of a disability. Plaintiff seeks equitable and other relief pursuant to 42 U.S.C. Section 2000e-5(g).

44. Defendant violated the Americans with Disabilities laws, by refusing to accommodate Plaintiff's disability in the work place.

45. Plaintiff was discriminated against based on race, in that he was penalized for actions far less serious than those of persons from other races.

46. Plaintiff was the victim of disparate treatment, as compared to other non-African-American employees and was retaliated against for reporting the disparate treatment.

## THIRD CAUSE OF ACTION
## FOR RETALIATION

47. Plaintiff incorporates by reference as if stated in full herein, the foregoing paragraphs 1-46.

48. Defendant retaliated against Plaintiff for trying to oppose or remedy discrimination by filing a charge of discrimination on the basis of race and/or disability with the EEOC, the State of Connecticut Commission on Human Rights and Opportunities, his union, and other governing bodies. Defendant retaliated against Plaintiff for trying to oppose or remedy discrimination by complaining about, opposing or protesting perceived discrimination against himself and other African-American employees, and assisting others in opposing discrimination.

Defendant revealed Plaintiff's charges of discrimination to Plaintiff's co-workers and supervisors and then took retaliatory action against Plaintiff. Defendant's adverse actions against Plaintiff was the result of the discrimination charges filed by Plaintiff. Defendant's adverse action against Plaintiff was designed to, and had the effect of, dissuading employees from making a charge of their own or communicating with the EEOC in general.

49. Plaintiff's report of this unlawful conduct was a motivating reason for Defendant's decision to retaliate against Plaintiff.

50. Plaintiff was emotionally and physically harmed by being harassed and discriminated against by Defendant.

51. Defendant's retaliatory conduct of harassing and discriminating against Plaintiff in work assignments and in other punitive conduce, was a substantial factor in causing Plaintiff's harm.

52. Defendant retaliated against Plaintiff because Plaintiff has opposed practices that are forbidden under local, state and federal law.

53. The person(s) employed by Defendant who made the actual decisions about Plaintiff's job, either verbally or in writing, knew that Plaintiff filed charges against Defendant for discrimination on the basis of race or disability.

54. Defendant commented negatively and openly in front of other employees about Plaintiff's charges of racial discrimination.

55. Defendant's retaliation would not have occurred if Plaintiff had not engaged in the protected activity described in paragraph 48.

56. Plaintiff seeks punitive damages against Defendant to punish Defendant ad deter Defendant from future acts of discrimination on the basis of race or disability.

57. After Plaintiff filed his discrimination claims, Plaintiff suffered an adverse action taken by Defendant due to the filing of his discrimination claims.

## FOURTH CAUSE OF ACTION

### FOR VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, Connecticut General Statutes 46a-51 to 104

58. Plaintiff incorporates by reference as if stated in full herein, the foregoing paragraphs 1-57.

59. Defendant violated the Connecticut Fair Employment Practices Act Connecticut General Statutes 46a-51 to 104 ("CFEPA") by engaging in employment practices which discriminated against Plaintiff on the basis of race and disability.

60. Defendant violated the CFEPA by refusing to accommodate Plaintiff's disability in the work place.

61. Defendant violated the CFEPA by discriminating Plaintiff on the basis of race, in that Plaintiff was penalized for actions far less serious than those of persons from other races.

62.Defendant violated the CFEPA by making Plaintiff the victim of disparate

treatment, as compared to other non-African-American employees and by

retaliating against Plaintiff for reporting the disparate treatment.

63.On information and belief, Plaintiff's workplace has 15 or more employees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays judgment against Defendants, and each of them

as follows:

1.  Damages in the amount of $300,000.00.

2.  Punitive damages in the amount of $200,000.

3.  Plaintiff's attorney's fees, expert fees, and court costs.

4.  For such other and further relief as the Court may deem

proper.

Respectfully Submitted,

DATED:  July 10, 2019                    By:  /s/Sallie A. Blackman.
                                              Sallie A. Blackman
                                              Attorney for Barry Abraham
                                              110 West C Street Suite 1300
                                              San Diego, CA. 92101
                                              Telephone: (619) 440-8888
                                              Facsimile: (619) 330-9915
                                              Email: Sallieblackman@gmail.com